UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------x
                                          :
                                          :
IBA MOLECULAR NORTH AMERICA,              :
INC.                                      :
                Plaintiff,                :
                                          :
                                          :     11 Civ. 1862
           v.                             :
                                          :        OPINION
                                          :
ST. PAUL FIRE AND MARINE                  :
INSURANCE CO. and GENERAL STAR            :
INDEMNITY CO.,                            :
                                          :
                Defendants.               :
                                          :
------------------------------------------x
```

This declaratory judgment action arises out of an automobile accident that occurred in 2001, while an employee of Pharmacologic PET, LLC, the predecessor to plaintiff IBA Molecular North America ("IBA Molecular"), was driving a company automobile during an apparent crime spree and, while running from the police in the car, hit a police officer. IBA received insurance coverage from its primary automobile insurance policy, but the damages paid exceeded the policy limits of that policy. IBA is now seeking insurance coverage under an umbrella insurance policy issued by defendant General Star Indemnity Company ("General Star"), or alternatively under a commercial general liability ("CGL") policy issued by St. Paul Fire and Marine Insurance

Company ("St. Paul").  The CGL policy contains an "auto exclusion" which, St. Paul argues, mandates summary judgment in its favor.

St. Paul moves for judgment on the basis of the auto exclusion.  IBA joins this motion.  IBA also requests summary judgment on its claim against General Star.

The motion of St. Paul and IBA based on the auto exclusion is granted.  The motion of IBA for summary judgment against General Star is denied because there appear to be issues between IBA and General Star which cannot be resolved on the present motion.

## FACTS

On September 21, 2001, Andrew Britt was involved in an automobile accident with Dennis Bridges that caused injury to Britt.  At the time of the accident, Bridges was an employee of Pharmacologic, driving an automobile owned by Pharmacologic.  Britt was a police officer attempting to apprehend Bridges during what the parties appear to agree was a "crime spree" perpetrated by Bridges, which involved Bridges committing various crimes in Albany, New York and then fleeing from the police in one of Pharmacologic's automobiles.  As a result of the car accident, Britt suffered injuries.  Bridges was convicted of assault, reckless endangerment, and criminal possession of stolen property, and sentenced to 25 years to life, which he is currently serving in state prison.

Britt and his wife sued Pharmacologic and Bridges in New York Supreme Court.  Pharmacologic placed Hartford Fire Insurance Company and General

Star on notice of the suit at that time. Hartford and General Star, respectively, had issued Pharmacalogic primary automobile and umbrella insurance policies. Defendant St. Paul, the issuer of a CGL policy, was not put on notice of the suit at this time.

In late January 2008, Britt notified St. Paul of the accident and sought to have St. Paul cover the accident. In February 2008, St. Paul disclaimed liability on the basis of the auto exclusion and late notice.

The present motion only concerns the automobile exclusion.

In February 2008, a jury found Pharmacologic and Bridges liable. It found that Bridges was negligent, and that Pharmacologic was negligent in hiring Bridges and entrusting a vehicle to him. It awarded Britt a verdict of over $3 million dollars.

IBA, the successor in interest to Pharmacologic, ultimately settled the negligent hiring and negligent entrustment claims for $1.2 million. Of the $1.2 million, Hartford paid $500,000, its policy limit. General Star and St. Paul both refused to pay the remaining $700,000, leaving Pharmacologic to fund the remaining $700,000 itself while pursuing General Star and St. Paul in litigation.

The parties now dispute whether St. Paul or General Star is required to cover the remainder of the damages sustained by Pharmacologic. The following is pertinent language from the relevant insurance policies.

The Hartford automobile insurance policy has a limit of $500,000 per accident, and contains the following language:

> We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'

Hartford was placed on notice of the lawsuit filed by Britt, defended the suit, and ultimately helped to fund the settlement of the claims against Pharmacologic.

General Star's umbrella insurance policy has an aggregate policy limit of $3,000,000. It provides coverage for "bodily injury" or "property damage" that occurs during the policy period and is caused by an "occurrence," which is defined as an "accident." The policy also contains a long and detailed list of exclusions, but no exclusion for incidents arising from the ownership, maintenance, or use of an automobile.

Finally, the St. Paul CGL policy provides up to $1,000,000 of coverage for amounts that an insured is required to pay for "bodily injury" or "property damage" caused by an "event," which is defined as an "accident." It contains an automobile exclusion, precluding coverage of certain incidents:

> We won't cover bodily injury, property damage or medical expenses that result from the
>
> - Ownership, maintenance, use or operation;
> - Loading or unloading; or
> - Entrustment to others;
>
> Of any auto owned, operated, rented, leased or borrowed by any protected person.

<u>The Claims and the Motions</u>

In the complaint, IBA claims that either, or both, of General Star and St. Paul are required to pay for the $700,000 in excess damages it suffered over

the $500,000 Hartford policy limit. However, in its motion, IBA relies on the theory that St. Paul is not liable, but General Star is. St. Paul and IBA contend that St. Paul is not liable because this accident comes within the automobile exclusion in its policy. General Star contends that St. Paul's automobile exclusion does not apply here. St. Paul has moved for summary judgment on and IBA joins St. Paul's motion and IBA has filed its own motion for summary judgment on the same grounds, along with the claim that General Star is liable.

## DISCUSSION

St. Paul's Liability and the Automobile Exclusion

As noted above, IBA and St. Paul argue that the automobile exclusion in St. Paul's insurance policy prevents St. Paul from having to pay any damages in the underlying lawsuit, which resulted from an automobile accident.

General Star's theory as to why St. Paul's automobile exclusion does not apply is that "negligent hiring" is a so-called "non auto" theory of liability. General Star goes on to argue that, since negligent hiring is a "non auto" theory of liability, claims of negligent hiring are covered by St. Paul's policy, even where the insured negligently hires an employee who gets into an automobile accident.

New York's Second Department has held that an automobile exclusion applies to damages paid as a result of an automobile accident that occurred after the insured's negligent hiring resulted in the insured sending an unlicensed and intoxicated taxi driver to pick up a customer. The court in

Ruggerio v. Aetna Life & Casualty Co. stated that defendant's insured's negligent actions in hiring an incompetent and unqualified driver and dispatching him when he was intoxicated do no more than provide reasons or subfactors' explaining why the accident arose out of the operation of an automobile and are therefore also excluded from coverage under the policy. 484 N.Y.S.2d 106, 106-107 (2d Dep't 1985).  The First Department took the same approach in New Hampshire Insurance Company v. Jefferson Insurance Company, 624 N.Y.S.2d 392, 395 (1st Dep't 1995), holding that even though the plaintiff alleged a theory of liability—negligent supervision of campers—that had nothing to do with automobiles, without the resulting automobile accident there would be no cause of action, so the automobile exclusion applied.  The court also stated that it is necessary to observe only that, whatever theory of liability the resourceful attorney may fashion from the circumstances of a client struck by an automobile, it remains that the immediate and efficient cause of the injury is, in fact, the automobile.

  In this case, Britt was injured as a result of Bridges' use of one of Pharmacologic's automobiles, placing the injury squarely within the automobile exclusion.  The claim of negligent hiring does not change the fact that the negligent hiring here resulted in a car accident, which is not covered.  See Ruggerio, 484 N.Y.S.2d at 106-07.  Also the jury verdict in the underlying litigation found Pharmacologic liable not just for negligent hiring, but also for negligent entrustment.  By its terms, the auto exclusion in the insurance policy expressly excluded claims resulting from "entrustment" of an automobile.

General Star also argues at length that the automobile exclusion only applies where there is "permissive use" of the automobile. This argument finds no support in the language of the CGL Policy, which does not condition the exclusion on permissive use, nor does General Star offer any case law suggesting that this limitation should be read into the policy.

General Star also relies on <u>National Casualty Company v. American Safety Casualty Insurance Company</u>, 812 F. Supp. 2d 505, 514 n.7 (S.D.N.Y. 2011), in which the court noted that claims for negligent hiring are legally unrelated to accidents resulting from the employee's use of a covered automobile. However, the facts of that case make inapplicable to the present case. In that case, the issue was whether an automobile insurer was obliged to cover an incident of "road rage," where, after one driver cut off another driver, the two drivers exited their vehicles and got into a fight, leaving one driver severely injured. The court appropriately determined that the injuries at issue occurred after both passengers exited their cars and started fighting, not due to the use or operation of any automobile, such as an automobile accident, and held that the automobile policy did not cover the incident. <u>Id.</u> at 513-14.

Finally, in an effort to avoid summary judgment in St. Paul's favor, General Star argues that St. Paul did not timely disclaim coverage for this accident pursuant to New York Insurance Law § 3420(d). Under § 3420(d)(2)

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any

other claimant.

General Star argues that St. Paul's disclaimer was defective because it did not disclaim coverage until seven years after the accident (in 2008), and did not provide General Star with notice of its disclaimer. However, it is undisputed that notice of the suit was not provided to St. Paul until January of 2008, when Britt notified St. Paul, and St. Paul's disclaimer was sent less than 30 days later in February of 2008. General Star asserts that the timeliness of St. Paul's disclaimer is a factual issue, but General Star has done nothing to contradict St. Paul's version of events, which tells the story—under oath—of a sufficiently prompt notice of disclaimer to comply with § 3420(d)(2). Of course, St. Paul was not required to disclaim coverage (and could not have done so) before it knew of the incident, so its disclaimer seven years after the fact was timely. Moreover, the plain language of that section does not require that General Star receive a copy of the disclaimer—only the "insured and the injured person or any other claimant."

Therefore, St. Paul is entitled to summary judgment dismissing the claim against it.

General Star's Liability

As described above, St. Paul's motion focuses entirely on the automobile exclusion, which as described above, excludes coverage for this accident. IBA's motion incorporates St. Paul's motion but also states that General Star is obligated to pay the excess over what Hartford paid. However, IBA's motion does not establish this through an analysis of the umbrella policy and the

relevant facts. General Star opposes IBA's request for summary judgment, pointing to various defenses it might assert against IBA's claim. Thus IBA has not established that it is entitled to judgment against General Star, and IBA's motion is denied to the extent it seeks a judgment against General Star.

## CONCLUSION

For the foregoing reasons, the motion of St. Paul and IBA based on the auto exclusion is granted. The motion of IBA for summary judgment against General Star is denied.

This opinion resolves the motions listed under document numbers 8 and 16 on the docket of case 11 Civ. 1862.

So ordered.

Dated: New York, New York
       September 27, 2012

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sept 27, 2012

_____
Thomas P. Griesa
U.S. District Judge